## J. C. Nichols, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 89169.   Promulgated August 27, 1940.

*Arthur R. Foss, Esq.,* for the petitioner.

*David Altman, Esq.,* and *Albert B. Peterson, Esq.,* for the respondent.

624

**OPINION.**

TURNER: In his determination of the deficiency the respondent concluded that the partnership during 1934 had forgiven the petitioner his indebtedness to the extent of $8,900, within the meaning of article 22 (a)–14 of Regulations 86 [1] and that this forgiveness of indebtedness constituted income to the petitioner for that year. On brief it is pointed out that petitioner dominated the partnership and its busi-

---

[1] ART. 22 (a)–14. *Cancellation of indebtedness.*—The cancellation of indebtedness, in whole or in part, may result in the realization of income. If, for example, an individual performs services for a creditor, who in consideration thereof cancels the debt, income in the amount of the debt is realized by the debtor as compensation for his services. * * *

ness and was the principal producer of its income and that the release of petitioner from the said indebtedness was a further payment for services rendered, which payments under article 183–1 of Regulations 86 are "held to represent a division of partnership profits." The respondent further contends that as the result of petitioner's overdrafts his capital investment in the partnership had been completely exhausted prior to the taxable year; that the release of the indebtedness here in question amounted to a distribution to petitioner by the partnership, and, petitioner having previously recovered the full amount of his capital investment, the said distribution was in any event income to him. *Helvering* v. *Smith*, 90 Fed. (2d) 590.

In the amended petition it is alleged that petitioner was not relieved of liability for the $8,900 in question, "but he either remained fully liable to the said partnership or he became and remained indebted to his other partners individually." It is now contended that he is indebted to each of the other partners for one-fourth of the $8,900 written off the partnership books. It is further contended that petitioner, having a one-fourth interest in the partnership, owned one-fourth of the debt and to that extent could not under any circumstances be said to have realized gain. The latter proposition suggests the question as to whether or not a partnership is to be regarded as an entity separate and apart from its members for the purpose of determining the separate income of a member in respect of transactions between it and such member. In the view we take of the case, however, it will not be necessary to consider that proposition. See, however, *Helvering* v. *Walbridge*, 70 Fed. (2d) 683, and *Edward B. Archbald*, 27 B. T. A. 837; affd., 70 Fed. (2d) 720.

Considering the relationship of the parties, the source of the capital of the business, the actual withdrawals by the four individuals, the treatment of petitioner's overdrafts, the conduct of the business, and the disposition and terms of disposition of the interests of J. Toussaint and G. A. Nichols, it might be forcefully argued that no actual partnership ever existed or was intended. Be that as it may, the respondent in making his determination of deficiency and the parties in trying this proceeding have assumed the existence of a partnership, and in reaching our conclusion we shall do the same. By so doing, however, we are not required to close our eyes to the facts and to determine the income of the individual partners according to the ratios or terms originally prescribed in the partnership agreement if the subsequent acts and conduct of the partners themselves show that actual participation in the fruits of the business has been placed on a different basis. Our task here is to determine the income of J. C. Nichols, one of the partners, and if, by reason of his dominant position in the business and because of personal or business relations between him and the other partners, he was able to obtain and did obtain a greater

portion of the partnership profits than was originally indicated in the partnership agreement, actual events must control and any additional amount so acquired should be included in his income, regardless of whether it be described as an increased share of profits, compensation for services rendered, or indebtedness forgiven.

According to the partnership agreement a partnership under the firm name J. C. Nichols was organized under date of April 12, 1925, with J. C. Nichols, J. Toussaint, P. G. Nichols, and G. A. Nichols each having a 25 percent interest therein. J. C. Nichols was to be manager in charge of sales and J. Toussaint office manager in charge of accounts, while G. A. Nichols and P. G. Nichols were to act in a promotional and advisory capacity. J. C. Nichols was to receive a salary of $16,000 per annum and J. Toussaint a salary of $3,900, while G. A. Nichols and P. G. Nichols were to be entitled to receive advances against future profits. It was provided that salaries might be changed by mutual consent of all parties. A capital account was opened on the books of the company in the name of each of the four individuals. These accounts purport to show that on April 14, 1925, each of the individuals named paid into the business in cash or property the total amount of $29,344.93. That a substantial portion of these payments was in the nature of good will is indicated by a debit appearing in each of the accounts some two years later, described as a charge-off of good will, in the amount of $14,506.55.

While the above agreement tends to show that a partnership in the profits of which the four individuals were to share equally was organized in 1925 and the capital accounts on their face indicate capital contributions by the four in equal amounts, the record shows that the capital was in fact advanced by petitioner and that amounts substantially in excess of 25 percent of the profits were appropriated to petitioner's personal needs and uses. In 1925 petitioner, according to his testimony, invited his father, his brother, and his brother-in-law to become partners in an established business for the selling of veneer or rotary cut lumber. None of these individuals actually put anything in the business, and with respect to Toussaint the record certainly indicates that he had no means from which such a capital investment might have been made. The business had been built up by the petitioner through his own efforts and no other person, unless it was his father, G. A. Nichols, owned any part or share therein, and any interest that his father might have had was obviously not substantial. J. Toussaint, P. G. Nichols, and G. A. Nichols each gave petitioner his noninterest-bearing demand note for $47,000, but we would hesitate to conclude in the light of subsequent events that it was ever intended that anything should be paid thereon, and we do know that after approximately 14 years nothing had been paid. The business was successful from its inception and the profits were

credited in equal shares to the capital accounts of the partners, and by the close of 1934, the taxable year, the total profits shown in each such account amounted to $81,275.21. During that same period the petitioner had withdrawn substantially more than the 25 percent of the profits credited to his account. In 1930 transfers were made from the accounts of the other three partners of a total amount of $47,626.06 to bolster petitioner's capital account, which in turn was used to absorb overdrafts in his personal drawing account. By December 31, 1930, such overdrafts totaled $107,679.56, all of which as of that date had been debited to his capital account. By the end of 1932 he was again overdrawn, in the amount of $31,554.96, for which he executed his promissory note, but during the following year the note was written off the partnership books to the extent of $22,500 through a corresponding write-up of certain stock owned by the partnership, while on December 12, 1934, the balance of the note was similarly written off to the extent of $8,900, and the remaining $154.96 was charged back to petitioner's personal drawing account. At the same time his drawing account had again become substantially overdrawn and at December 31, 1934, the overdrafts amounted to $30,419.03.

On the record here it is impossible to tell with certainty the exact amounts appropriated by the other three partners for their own use and benefit, but the facts are sufficient to show that they were not in any way comparable to those appropriated by petitioner, and, in the case of J. Toussaint and P. G. Nichols, were quite small. The total charges against the capital accounts of J. Toussaint, P. G. Nichols, and G. A. Nichols from the beginning of the partnership to December 31, 1934, were $60,893.53, $50,719.76, and $60,463, respectively, but of those charges $14,506.55 in each account covered the charge-off of good will and $21,899.97, $22,073.11, and $3,652.98 covered respective transfers to petitioner's capital account.

Exclusive of the charges explained in the preceding paragraph and which obviously did not represent appropriations to his personal use, the debits to J. Toussaint's account for the period from April 14, 1925, to December 31, 1934, amounted to $24,487.01 and might possibly have been appropriated for his personal use, but even if that should be true such withdrawals were offset to the extent of $12,887.67 by bank loans and proceeds from the sale of stock deposited in the account. Also, common to the capital accounts of each of the partners except petitioner, there is a debit of $4,000 in favor of O. R. Nichols whose relationship has not been explained but who it may reasonably be presumed was another member of the family circle. If the O. R. Nichols debit be eliminated, Toussaint's net personal withdrawals up to the close of the taxable year did not exceed $7,600.34 as compared to similar withdrawals by petitioner approximating $150,000, and yet accord-

ing to the record Toussaint was, during that period, experiencing financial difficulties.

Exclusive of the good will charge-off and the transfer to the capital account of the petitioner, the total debits to the capital account of P. G. Nichols at December 31, 1934, amounted to only $14,140.10, and if the debit of $4,000 in favor of O. R. Nichols, previously discussed, should also be eliminated and it be concluded that the remaining withdrawals were for the personal use and benefit of P. G. Nichols, those withdrawals for the period from April 14, 1925, to December 31, 1934, amounted to only $10,140.10. From December 31, 1934, through 1938, his withdrawals amounted to only $963.38 and apparently covered the payment of income tax. For the same period the credits amounted to $18,718.12, and, except for four items totaling only $408.55, represented one-fourth of the profits of the business during the period described.

The debits in the account of G. A. Nichols which may be said to have been appropriated to his personal use and benefit are more substantial. Exclusive of the good will charge-off and the transfer to petitioner's capital account under date of April 19, 1930, the total debits amounted to $42,303.57, and if we further eliminate the $4,000 debit in favor of O. R. Nichols, previously discussed, there is still a balance of $38,303.57, which possibly may have been appropriated by G. A. Nichols to his personal use. It is to be noted, however, that the total profits from the business credited to his account during the same period were more than twice that amount, and, further, that G. A. Nichols, on December 31, 1937, transferred his entire interest in the partnership, including further accumulated earnings, to petitioner's son and his grandson without consideration other than the possible assumption of his $47,000 noninterest-bearing demand note which the petitioner had held since 1925, and in view of the further fact shown by the record that G. A. Nichols continued to make monthly withdrawals from the business after the transfer of his interest to his grandson, such withdrawals being charged against the interest so transferred, it might be reasonably argued that the withdrawals for his personal use during the entire period from the beginning of the partnership were in the nature of gratuities from petitioner.

We also think the disposition and terms of disposition of Toussaint's interest in the partnership is of significance. On December 31, 1935, his capital account was closed by transferring the credit balance of $66,008.62 to petitioner's capital account, in return for which, according to the testimony, Toussaint received his previously described noninterest-bearing demand note for $47,000 and a further note or notes for $6,500 covering loans made to him by petitioner. A prior transfer of $21,899.97 under date of April 19, 1930, described as a loan, had already been made from Toussaint's capital account to the capital

account of petitioner. The record is silent as to the effect of the transaction of December 31, 1935, on that item, and there is no showing whether or not Toussaint thereafter retained any claim for that amount. In his reply brief, however, petitioner classifies any consideration of the $21,899.97 in connection with the closing of Toussaint's capital account as obvious error and suggests that the interest in the partnership transferred by Toussaint to the petitioner at the time of his withdrawal was worth approximately the amount of his indebtedness to the petitioner, namely, $53,500. As we understand it, it is the petitioner's claim that the interest transferred by Toussaint to petitioner was a full one-fourth interest in the business and the profits therefrom. If that is correct, Toussaint transferred to petitioner a one-fourth interest in a business which had been successful from the beginning, a business which during the period from April 14, 1925, to December 31, 1935, had produced profits in the amount of $338,340.52, a one-fourth share therein being $84,585.13, and further Toussaint was not only giving up an interest which had such an earning record but was also handing over to petitioner as a part of the same transaction and without additional consideration his right to past earnings amounting at least to $38,282.57. This amount is arrived at by excluding from consideration the $21,899.97 transferred in April 1930, with respect to which the record is silent, and by eliminating from the credit balance transferred on December 31, 1935, $14,838.38 representing the balance of the original capital entry after the charge-off of good will in 1927, also $12,887.67, being the amount of bank loans and proceeds from the sale of stock which had been deposited presumably by Toussaint in the said account.

It is true the transfers in April 1930 to petitioner's capital account were described as loans from the other three partners, and, while the partnership accounts show no continuing obligation of petitioner with respect to the note of December 31, 1932, which was written off in 1933 and 1934 by a write-up of certain partnership assets, there is testimony to the effect that when $22,500 thereof was written off in 1933 petitioner gave notes to each of the other three partners for one-fourth of the amount written off and when the $8,900 item involved in this proceeding was written off in 1934 there was an intent to give similar notes. The fact is, however, that no notes were given with respect to the $8,900, there is no showing that it was entered on the accounts of any of the parties as a continuing liability of petitioner, and nothing has ever been paid thereon. It is equally true that all of the partners consistently refrained from making any payments on any of the apparent obligations arising out of or in connection with the partnership arrangement, and not only were no payments made, but, even though there were numerous cases of the overlapping of paper obligations, no

balance was ever struck between the petitioner and any of the partners, not even when Toussaint withdrew from the business in 1935 and G. A. Nichols withdrew in 1937. During all that time the petitioner continued his practice of overdrawing his purported one-fourth share of the profits, while the other partners were taking only a small part of their purported shares.

Our particular problem has to do with the $8,900, being that portion of the note of December 31, 1932, written off in 1934. With respect to the origin of the note and the reasons for writing it off there is considerable confusion. The petitioner stated that the write-off and the form it took was suggested by an official at a bank with which the partnership did business, the reason for the banker's suggestion being that the presence of petitioner's obligation on the partnership books made the partnership's financial statement look bad. Toussaint testified that the suggestion for the write-up of the partnership assets as a means of eliminating the note came from the partnership auditor. Petitioner and Toussaint seemed to be in agreement, however, that, regardless of where the idea to write up partnership assets came from, the elimination of petitioner's obligation under the note both in 1933 and in 1934 came from the bank official, the purpose being to improve the partnership's financial statement. During 1934, however, when petitioner was so seeking to satisfy the bank and improve the partnership's financial statement by the elimination of a $8,900 liability under a note, he was accumulating a much larger overdraft in his personal drawing account, which at December 31, 1934, amounted to $30,419.03. Accordingly we are not greatly impressed with the explanation given for the write-off. Taking into consideration the manner in which the partnership was formed, the source of its capital, the continued practice of the petitioner to withdraw amounts far in excess of one-fourth of the partnership profits, the method of eliminating his overdrafts, the comparatively small withdrawals by the other partners, the consistency with which petitioner has refrained from making any repayment to the partnership or any of the partners with respect to his overdrafts written off the partnership books, the equal consistency with which the other partners refrained from making any payments on their notes of $47,000 each given to petitioner when the partnership was formed in 1925, and the care with which Toussaint and petitioner have indicated that no offsets were made or intended by reason of the overlapping liabilities, it is our conclusion that, while the partnership profits were regularly entered in the four capital accounts, the shares of Toussaint, P. G. Nichols, and G. A. Nichols were intended to be and at all times were subject to the needs and demands of petitioner. Our case here involves only the $8,900 eliminated from the

books in 1934, which petitioner maintains he still owes pro rata to the partners, and we are not called upon to determine the tax effect of other adjustments. It is our opinion that any thought on the part of petitioner to ever make payment, to the partnership or any of the partners, of the $8,900 written off the partnership books on December 12, 1934, was too remote to justify any conclusion that there was any continuing obligation therefor, and we accordingly conclude that the cancellation of the note did result in a realization by petitioner in 1934 of additional income in the amount of the $8,900 written off, regardless of whether it be said that such realization was effected through the forgiveness of indebtedness, the payment of increased compensation by mutual consent of the partners, or by apportionment of the 1934 profits.

The second question presented is whether respondent erred in including in petitioner's taxable income $2,400 which was received by him in the form of monthly credits of $200 each to his personal drawing account, allegedly for traveling and automobile expenses. The record shows that $1,200 of this amount was in fact paid to a chauffeur employed by the partnership to operate a partnership automobile, $964.95 of which was paid by partnership checks charged to petitioner's personal account and the remainder of which was paid in cash out of petitioner's pocket. While the chauffeur was not carried as an employee on the books of the partnership, we think the evidence establishes that he was in fact an employee of the partnership, and we do not think the petitioner's income should include the $1,200 paid to him as salary. With respect to the remaining $1,200, which was supposed to represent the amount of small payments made by petitioner to the chauffeur from time to time to cover traveling expenses, the evidence is not convincing. The partnership maintained a separate account on its books to cover automobile expenses and also a separate account to cover petitioner's traveling expenses. Most of the entries in this latter account fail to disclose the manner in which petitioner traveled, but at least one entry, in the amount of $300, is described as an "auto trip to all mills." In view of the fact that petitioner kept no record of his expenditures while traveling and in further view of the manner in which his traveling expenses were kept in a separate account on the partnership books, we are not convinced that the remaining $1,200 was in fact used in the partnership business and that the respondent erred in determining that this $1,200 should be included in petitioner's income. To that extent his determination is sustained.

*Decision will be entered under Rule 50.*